**FEDERAL PROPERTY MANAGEMENT CORPORATION et al., Plaintiffs,**

v.

**Patricia R. HARRIS et al., Defendants.**

**Civ. No. C–3–76–255.**

United States District Court,
S. D. Ohio, W. D.

March 15, 1978.

---

Armistead W. Gilliam, Jr., Charles J. Faruki, Stephen J. Butler, Douglas B. Gregg, Dayton, Ohio, for plaintiffs.

Barbara Allen Babcock, Asst. Atty. Gen., Civil Div., Dept. of Justice, Washington, D. C., James C. Cissell, U. S. Atty., Cincinnati, Ohio, Maryann Clifford, Dept. of Justice, Washington, D. C., for defendants.

## ORDER

CARL B. RUBIN, District Judge.

This matter is before the Court upon an agreed statement of material facts and cross motions for partial summary judgment on Plaintiff's rent supplement claims as set forth in the second amended complaint (¶'s 3, 61–87).

Plaintiffs herein are owners of low and moderate income housing projects insured under sections 236 and 221(d)(3) of the National Housing Act (NHA), 12 U.S.C. § 1701 et seq. In connection with the management and ownership of such projects, those plaintiffs listed in Exhibit A to plaintiffs' second amended complaint have executed rent supplement contracts with the Secretary of Housing and Urban Development (HUD). The contracts provide that defendants will pay each plaintiff a percentage of the established basic rent for each qualified tenant. The payments are intended to equal the difference between each qualified tenant's rent and the fair market rental value of that tenant's apartment.

The plaintiffs listed in Exhibit A are in default on their mortgage obligations. As a result of these defaults the original mortgagees have assigned the mortgages to HUD in lieu of foreclosure, pursuant to the insurance agreements.

Although § 12 of the rent supplement contracts permits defendants to terminate the contract with a defaulting project owner, HUD has not done so with respect to these plaintiffs. Instead defendants have retained the rent supplements and applied them to offset plaintiffs' delinquent obligations on the mortgages. This procedure has not reduced the benefits to tenants.

Plaintiffs assert that defendants' withholding of rent supplement payments is unreasonable, unlawful, and contrary to the expressed intent of Congress. They seek injunctive relief compelling defendants to pay to plaintiffs all rent supplement payments withheld to date, and all future payments.

Defendants contend that HUD's exercise of the common law right of set-off is both lawful and reasonable; and is an attempt to give mortgagors an opportunity to cure defaults while at the same time maintaining rent supplement benefits for qualified tenants.

This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1337.

The Court need address only two questions to resolve this matter:

1. Whether defendants have a contractual or common law right of set-off which may be applied to rent supplement payments owing to plaintiffs, and;

2. Whether such a right, if it exists, may be exercised consistent with public policy and defendants' obligations under the National Housing Act. 12 U.S.C. § 1701 *et seq.*; and the Housing Act of 1949, 42 U.S.C. § 1441.

■ The answer to question one must be in the affirmative. Section 12 of the Rent Supplement Contracts (Exhibit A to Kalish declaration) entered into by plaintiffs and defendants, permits HUD to terminate a contract upon default in mortgage payments. Since the parties have agreed that HUD may terminate rent supplements, plaintiffs cannot be heard to complain that defendants have chosen a less drastic course. Clearly, authority to set-off payments is subsumed in the right of termination.

■ Plaintiffs' assertion that such a set-off is an illegal impoundment of appropriated funds is without merit. Appropriation of funds for a particular program does not prevent HUD from setting reasonable standards of eligibility and performance for program participants. This case does not involve the refusal of an executive agency to implement a Congressional mandate *Train v. City of New York*, 420 U.S. 35, 95 S.Ct. 839, 43 L.Ed.2d 1 (1975). The cases cited by plaintiffs are therefore inapposite.

Question two raises matters beyond strict legalities. HUD is not a commercial lender. *Cole v. Lynn*, 389 F.Supp. 99 (D.D.C.1975). If it were, our analysis would not reach this point. HUD is a government agency charged with a heavy and difficult responsibility to provide for the adequate housing of citizens who are unable to secure such accommodations for themselves. As the court stated in reviewing a proposed foreclosure in *Kent Farm Co. v. Hills*, 417 F.Supp. 297, 301 (D.D.C.1976):

In exercising its admitted discretion, HUD must show more than a legal right to foreclose. HUD is not simply a banker. Before it acts because of default on a project clearly otherwise meeting housing objectives it must consider national housing policy and decide what further steps authorized by Congress it will take to assure continuity of the decent, safe, sanitary, low-cost housing then being provided.

■ The national housing policy of which the Court spoke is set forth in 42 U.S.C. § 1441, and has been reaffirmed in 12 U.S.C. § 1701t and 42 U.S.C. § 1441a. It provides as follows:

The Congress declares that the general welfare and security of the Nation and the health and living standards of its people require housing production and related community development sufficient to remedy the serious housing shortage, the elimination of substandard and other inadequate housing through the clearance of slums and blighted areas, and the realization as soon as feasible of the goal of a decent home and a suitable living environment for every American family, thus contributing to the development and redevelopment of communities and to the advancement of the growth, wealth, and security of the Nation . . . The Department of Housing and Urban Development, and any other departments or agencies of the Federal Government having powers, functions, or duties with respect to housing, shall exercise their powers, functions, and duties under this or any other law, consistently with the national housing policy declared by this Act and in such manner as will facilitate sustained progress in attaining the national housing objective hereby established . . . .

When measured against this standard defendants' practice of rent supplement set-offs is deficient.

In their answer, defendants admitted that

HUD considers the Rent Supplement Contract as an integral part of the financial composite of each project when HUD approves its feasibility and issues insurance on the mortgage which covers each such project." (Second Amended Complaint, ¶ 83).

Defendants now assert however, that their diversion of rent supplements in lieu of

termination is designed to maintain tenant benefits, while avoiding foreclosure and providing plaintiffs with an opportunity to cure their defaults. The Court is unable to grasp the logic of this argument.

It is true that defendants' procedure has preserved tenant benefits. We cannot imagine however, that denial of "an integral part of the financial composite" of plaintiffs' projects will result either in cure of defaults or avoidance of foreclosure. The more likely outcome is a steady degradation of the facilities and a consequent loss of tenants, leading inevitably to foreclosure. Such a result will benefit neither the displaced residents nor the parties herein.

The Court is aware that HUD has adopted the set-off policy in a well-intentioned attempt to steer a middle course between foreclosure and escalating mortgage losses. For the reasons set forth in *Kent Farms Co. v. Hills, supra; Cole v. Lynn, supra*; and *Brown v. Lynn*, 385 F.Supp. 986 (N.D.Ill. 1974), defendants' policy is far superior to foreclosure. Even so, it does not entirely avoid the infirmities noted in those decisions.

In *Brown*, Judge Will wrote that:

HUD had and has a statutory obligation to formulate and carry out a program reasonably calculated to provide a decent home and a suitable living environment for every American family. 42 U.S.C. § 1441

*supra*, at 998.

This obligation must guide all decisions affecting the well-being of qualified tenants. It is not met by embarking upon a course which is virtually certain to cause the slow strangulation of plaintiffs' projects. Plaintiffs must be provided with sufficient funds to maintain the environment contemplated by the Housing Act of 1949. *Pennsylvania v. Lynn*, 163 U.S.App.D.C. 288, 501 F.2d 848 (1974).

Accordingly, Plaintiffs' motion for partial summary judgment should be and is hereby GRANTED. Defendants' motion for partial summary judgment is hereby DENIED. Disposition of the remaining issues in this action is STAYED pending the decision of the United States Supreme Court in *Ross v. Harris* and *Abrams v. Harris.*